UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11260-GAO

ATHENAHEALTH, INC.,
Plaintiff,

v.

ADVANCEDMD SOFTWARE, INC.,
Defendant.

CLAIM CONSTRUCTION ORDER
November 26, 2013

O'TOOLE, D.J.

This is a patent dispute involving systems used by medical professionals to manage their practices. The plaintiff, athenahealth, Inc. ("Athena"), claims that the defendant, AdvancedMD Software, Inc. ("AdvancedMD"), infringes U.S. Patent No. 7,617,116 ("the '116 Patent"), entitled "Practice Management and Billing Automation System."

The '116 Patent consists of twenty claims, three of which are independent claims (1, 18, and 20). The parties dispute the proper construction of thirteen claim terms, which they have presented in five groups. In accordance with Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996), the disputed claim terms are construed as set forth herein.

## I. Legal Framework

"The words of a claim 'are generally given their ordinary and customary meaning' . . . [which] is the meaning that the term would have to a person of ordinary skill in the art at the time of . . . the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). This general rule has two exceptions: the patent specification may reveal

a special definition given by the patentee, or it may reveal an intentional disavowal of claim scope by the patentee. Id. at 1316; accord Thorner v. Sony Computer Entm't Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citation omitted).

Courts should first look to intrinsic evidence: the claims, the specification, and the prosecution history. Phillips, 415 F.3d at 1313-14. The claims are to be read "in view of the specification, of which they are a part. . . . [I]t is the single best guide to the meaning of a disputed term." Id. at 1315 (internal quotation marks and citations omitted). However, it is inappropriate to read limitations from the specification "into the claims absent a clear intention by the patentee to do so." MySpace, Inc. v. GraphOn Corp., 672 F.3d 1250, 1255 (Fed. Cir. 2012) (citing Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1326 (Fed. Cir. 2002)).

Courts may consider extrinsic evidence, including expert testimony, inventor testimony, dictionaries, and treatises, but it is "less reliable" and "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Phillips, 415 F.3d at 1318-19.

"Claim terms need only be construed 'to the extent necessary to resolve the controversy.'" Wellman, Inc. v. Eastman Chem. Co., 642 F.3d 1355, 1361 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1541 (2012) (citing Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999)). Courts may decide not to construe a claim term or to give it its plain and ordinary meaning, unless such a construction fails to resolve the parties' dispute. See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd., 521 F.3d 1351, 1361 (Fed. Cir. 2008).

**II.     Group 1**

A.     "a medical practice management server"

Athena proposes the following construction: "one or more servers that perform functions associated with managing a medical practice." The word "a" is generally construed as "one or more," unless "a patentee [] evince[s] a clear intent to limit 'a' or 'an' to 'one.'" See 01 Communique Lab., Inc. v. LogMeIn, Inc., 687 F.3d 1292, 1297 (Fed. Cir. 2012) (citing TiVo, Inc. v. EchoStar Commc'ns Corp., 516 F.3d 1290 (Fed. Cir. 2008); Baldwin Graphic Sys., Inc. v. Siebert, Inc., 512 F.3d 1338, 1342 (Fed. Cir. 2008)). Nothing in the '116 Patent indicates such an intent. The appropriate construction here of "a" is "one or more."

AdvancedMD proposes a construction that includes the following functions performed by the server: "(i) is in communication with a medical practice client and one or more payor servers via communication networks, (ii) directly exchanges with a medical practice client information about an event related to a patient and/or information representative of one or more insurance claims, (iii) directly exchanges with one or more payor servers information representative of one or more insurance claims." AdvancedMD contends that these three functions are key limiting features of the invention. Cf. Alloc Inc. v. Int'l Trade Comm'n, 342 F.3d 1361, 1370 (Fed. Cir. 2003) ("[T]he #907 specification read as a whole leads to the inescapable conclusion that the claimed invention must include play in every embodiment.").

In every embodiment of the claimed invention, the medical practice management server at some point in time must have communicated with one or more medical practice clients and one or more payor servers. For instance, the three independent claims, claims 1, 18, and 20, recite that "the medical practice management server . . . [receives] data indicative of a completed claim submission for a claim **from a medical practice client** . . . [and] appli[es] one or more

3

rules . . . wherein the one or more rules comprises a new rule, an updated rule, or both **received from the payor server**." Col. 20:8-10, 13-20; Col. 22:20-22, 25-32; Col. 23:7-9, 12-19 (emphasis added). Therefore, a key limiting feature of the invention is that the server is "in communication with" a medical practice client and a payor server, as AdvancedMD proposes. However, it is not necessarily the case that a medical practice management server must be presently or continually in communication with a medical practice client or a payor server over a "communication network," as AdvancedMD has proposed.

Nothing in the specification supports AdvancedMD's position that information must be exchanged "directly" from server to server. What the patent describes is a method for submitting claims in a way that detects and corrects errors that would prevent or delay their payment. What is important is that claim information is transmitted from A (the medical practice client) to B (the medical practice management server) to C (the payor server). The patent does not exclude the possibility that, at either the A to B step or the B to C step, the transmission of the information could be passed through an intermediary or agent, such as an aggregator or perhaps some kind of shared portal. While the specification may not expressly describe transmission via an intermediary, it is not necessary for the specification to address every conceivable embodiment. See Toshiba Corp. v. Imation Corp., 681 F.3d 1358, 1369 (Fed. Cir. 2012) ("Our case law makes clear that a patentee need not describe in the specification every conceivable and possible future embodiment of his invention.") (internal quotation marks omitted). To require that the transmission be direct, that is, "without an intervening agency or step," see *Merriam-Webster's Collegiate Dictionary* 353 (2009) (defining "direct" in its adverbial sense), would be to read in a limitation that is neither expressed in the claim language nor reasonably imputed from the specification. Additionally, AdvancedMD proposes that information which merely passes

4

through a series of routers on its way from A to B or B to C but is not "acted upon" by them would still be regarded as having been exchanged "directly." Adopting that interpretation would make things worse, because it would then be necessary to decide which intermediary things disrupt "direct" exchange and which do not.

Further, subparts (ii) and (iii) of AdvancedMD's proposed construction violate the doctrine of claim differentiation, under which there is a "presumption that each claim in a patent has a different scope." AllVoice Computing PLC v. Nuance Commc'ns, Inc., 504 F.3d 1236, 1248 (Fed. Cir. 2007) (internal quotation marks omitted). "The doctrine is at its strongest 'where the limitation sought to be read into an independent claim already appears in a dependent claim.'" Seachange Int'l, Inc. v. C-COR, Inc., 413 F.3d 1361, 1368 (Fed. Cir. 2005) (quoting Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 989, 910 (Fed. Cir. 2004)). Claim 1 does not require the medical practice management server to exchange any information representative of one or more insurance claims with any payor server, but dependent claims 9 and 13 add the requirement of "submitting the completed claim submission to the payor server for payment." Col. 21:12-13, 38-39. Further, independent claim 18 recites a step that paraphrases subpart (iii) but is absent from claim 1: "the medical practice management server transmitting the information to the payor server." Col. 22:59-60. The proper construction should treat each claim as having a different scope.

Accordingly, the claim term "a medical practice management server" is construed as *one or more servers that perform functions associated with managing a medical practice and are in communication with one or more medical practice clients and one or more payor servers.*

B.      "a payor server"

For similar reasons, the claim term "a payor server" should not include either the word "direct" or any functions that lie outside the scope of claim 1.

The only remaining dispute is whether Athena's construction of this claim term to mean "one or more servers used by a specific payor," is inappropriately broad. AdvancedMD proposes the narrower construction of "a server controlled by a payor," arguing that many servers, including the medical practice management server, are "used" in some broad sense by the payor but are not reasonably regarded as payor servers in the sense the patent intends. The likelihood that a jury would understand a "payor server" to include the medical practice management server is remote. That would be a rather tortured interpretation of the phrase "used by," and it does not represent a sensible understanding of the language of the patent. The ordinary meaning of "used by" provides ample clarity.

"A payor server" is construed as *one or more servers used by a specific payor*.

### III.    Group 2

A.      "each class of rules being associated with one of a plurality of payor servers" / "class of rules associated with the payor server"

Athena proposes the following construction: "class of rules defining the format and content of claims that a payor server processes." Arguing that Athena's construction fails to explain how each class of rules is associated with the payor server, AdvancedMD proposes the following construction: "each class of rules includes information designating the payor server of a payor for which the rules are appropriate."

In construing this claim term, it is unnecessary to explain *how* each class of rules is associated with a particular payor server. The specification does not limit the way in which a class of rules must be associated with a payor server. Embodiments of the claimed invention can

implement this association in a number of ways. The claim term merely recites that each class of rules is "associated with" a payor server. Again the meaning is to be understood consistently with the purpose of the claimed invention. The rules to be applied by the medical practice management server to a given claim submission have to be the right rules for the identified payor. "Associated with" is potentially ambiguous. A clearer way of expressing the intended meaning is to say that the rules are "identified to" a specific payor.

Athena's construction is unsatisfactory because it does nothing more than construe "rules," despite there being no real controversy between the parties as to the proper construction of "rules."

This claim term shall be given its ordinary meaning, except that "associated with" is construed as *identified to*.

B.   "completed claim submission for a claim" / "completed claim submission"

The parties agree that this claim term needs construction because while one ordinary meaning of the word "completed," "having all necessary parts, elements, or steps," is consistent with the intended meaning, another, "br[ought] to an end and especially into a perfected state," may be inconsistent with the claim language and specification. *Merriam-Webster's Collegiate Dictionary* 254 (2009). For instance, the specification discloses an embodiment of a completed claim submission wherein some of the fields are empty. Col. 15:66-16:3.

Under AdvancedMD's proposed construction, a completed claim submission is "electronic information representative of a claim ready to be submitted to a payor server to request payment of charges associated with a patient visit to a medical practice." Athena's proposed construction is "claim information entered by a medical care provider and transmitted to the medical practice management server for processing.

AdvancedMD's proposed construction risks confusion. Although AdvancedMD noted at the Markman hearing that "ready to be submitted to a payor server" means that the medical care provider believes that the claim is complete, use of the term "ready" introduces a needless ambiguity. It could mean that the claim is objectively ready to be submitted because of its own contents or that the medical care provider thinks it is ready and therefore is prepared to submit it.

Athena's construction, on the other hand, is more straightforward. A claim submission is "completed" when claim information has been entered and transmitted to the medical practice management server for processing. Despite AdvancedMD's arguments to the contrary, this construction is not too broad because it specifies that a completed claim submission must be *claim* information, not any information that is transmitted *for processing*, not for determining eligibility or any other purpose.

This claim term is construed to mean *claim information entered by a medical care provider and transmitted to the medical practice management server for processing*.

C.   "the claim being associated with a payor server"

The specification discloses an embodiment wherein "the submission of an insurance claim for a first payor could invoke the rules engine to apply particular formatting rules associated with the first payor," as Athena's proposed construction contemplates. Col. 6:23-26. But this is just one embodiment, and nothing in the specification or claim language limits the manner in which a claim must be associated with a payor server. Further, claim 5 recites "the method of claim 1, wherein the interacting step farther comprises determining the completed claim submission is associated with the payor server based on information in the completed claim submission." Col. 20:58-61. Applying the doctrine of claim differentiation, it is

appropriate to conclude that claim 5 imposes an additional requirement to claim 1 and that in claim 1 a claim need not be associated with a payor server by including certain information.

This claim term needs no construction, except that "associated with" shall be construed as *identified to*.

## IV.     Group 3

A.     [1] "automatically interacting with the completed claim submission by the medical practice management server to correct an error in the completed claim submission, [2] wherein the error is resolved by the medical practice client before processing the completed claim submission, [3] by applying one or more rules from a class of rules associated with the payor server, wherein the one or more rules comprises a new rule, an updated rule, or both received from the payor server"

The parties agree that the third clause ("by applying . . .") modifies the first clause ("automatically interacting . . . ") and not the second ("wherein the error . . . "). In other words, it is the medical practice management server that "appl[ies] one or more rules from a class of rules . . . " and not the medical practice client.

Athena argues that otherwise this claim term need not be construed, whereas AdvancedMD proposes a lengthy construction that includes two steps performed by the medical practice management server without human intervention and a separate construction of the phrase "wherein the one or more rules comprises . . . " to mean that "at least one applied rule within the class of rules containing insurance rules is either a new or modified insurance rule received via a direct transmission from the payor server." The word "direct" is inappropriate, for reasons previously discussed.

AdvancedMD cites case law to support construing "automatically" as "without human intervention." See, e.g., SuperGuide Corp. v. DirecTV Enters., Inc., 358 F.3d 870, 891 (Fed. Cir. 2004); Mirror Imaging, L.L.C. v. Affiliated Computer Servs., Inc., 2004 WL 5644804, at *10

(E.D. Mich. Feb. 26, 2004). While Athena recognizes that several courts have applied such a construction in various contexts, it argues that neither party asked for the Court to construe the word "automatically" in isolation nor suggested that the entire claim term be construed in a way that human intervention is entirely precluded.

Although the word "automatically" was not presented as a distinct claim term in need of construction, I nonetheless construe it as part of the broader claim term to mean *without human intervention*. This construction is consistent with the specification, see Col. 9:63 ("the medical practice management server **14** verifies and checks each piece of information entered without human intervention"), and the claim language. Moreover, it accurately describes a solution to problems that this invention sought to solve – human data entry errors and wasted resources.

Otherwise, this claim term needs no construction. Although it is lengthy, its words are either plainly obvious or construed elsewhere. As mentioned previously, a term need not be construed if adopting the ordinary meaning would settle the parties' dispute.

This claim term is to be given its ordinary meaning, except that "automatically" is construed as *without human intervention*.

B.   "correct an error"

Athena contends that this claim term needs no construction. AdvancedMD disagrees and proposes the following construction: "to edit or update information in a completed claim submission so that the completed claim submission will satisfy an appropriate insurance rule."

AdvancedMD properly notes that the term "error" has a precise meaning in the context of the patent, i.e., the failure of a claim submission to satisfy an insurance rule. Typographical errors, formatting errors, and incomplete information, which the specification cites as examples of claim errors, are errors by virtue of their failure to satisfy an insurance rule. See Col. 13:33-

36. Furthermore, the claims recite that the medical practice management server interacts with the completed claim submission to correct errors by applying rules. E.g., Col. 20:12-17.

Given this understanding of an "error" in a completed claim submission, it follows that correcting such an error requires editing or updating information in the completed claim submission so that the completed claim submission will satisfy the insurance rule or rules that are implicated. It may be unnecessary to say, but it is clear that "editing or updating" can include adding new information not part of a prior claim submission.

Therefore, the term "correct an error" means *edit or update information in a completed claim submission so that the completed claim submission will satisfy an implicated insurance rule*.

### C. "wherein the error is resolved"

This claim term shall be construed as *wherein edited or updated information satisfying an implicated insurance rule is transmitted by the medical practice client to the medical practice management server*.

## V. Group 4

### A. "claim edit screen"

AdvancedMD contends that the "claim edit screen" must be a window. This proposition must be rejected because it excludes a disclosed embodiment. The specification explicitly states that the medical practice client user interface can be text driven. Col. 4:46-47. That text driven interfaces such as DOS are technically capable of producing windows does not help AdvancedMD's proposed construction because such interfaces do not typically employ windows.

It is clear from the ordinary meaning of "claim edit screen" that it must be displayed and viewable via the medical practice user interface. Thus, Athena's proposed construction, "user interface for editing a claim," is inappropriately broad and covers, for instance, a voice user interface that does not display any content and wherein the user interfaces with the machine solely by way of voice prompts. It is important to note that text driven user interfaces like DOS, though not graphically driven, still use screens to display text.

For these reasons, "claim edit screen" is construed as *visual display interface allowing a medical care provider to edit or update a completed claim submission*.

### B. "claim error explanation portion to explain one or more errors in the completed claim submission to a medical care provider"

All three independent claims recite a "claim edit screen comprising a claim edit section . . . and a claim error explanation portion to explain one or more errors in the completed claim submission to a medical care provider." Col. 20:28-32; Col. 22:40-44; Col. 24:3-7. AdvancedMD's proposed construction – "a portion of the claim edit screen that displays information explaining one or more errors identified in the completed claim submission" – does nothing to clarify the meaning of "portion," which is a term ambiguous enough that a jury may be confused as to its meaning. Athena's proposed construction – "screen content that prompts a medical care provider with an explanation of one or more errors in the completed claim submission" – reads better into the claim language and clearly circumscribes what content constitutes the claim error explanation portion.

For these reasons, this claim term is construed to mean *screen content that prompts a medical care provider with an explanation of one or more errors in the completed claim submission*.

**VI.** **Group 5**

A. "updated completed claim submission"

Construction of this claim term must be consistent with construction of the next claim term, or in other words, must not render the next claim term superfluous or nonsensical. See AllVoice Computing PLC v. Nuance Commc'ns, Inc., 504 F.3d 1236, 1247 (Fed. Cir. 2007).

AdvancedMD's proposed construction is supported by a logical reading of the claims and specification, whereas Athena's proposed construction would obviate the step involving "the medical practice management server correcting the completed claim submission based on the updated completed claim submission" because the completed claim submission would already be corrected. Col. 20:36-38. AdvancedMD's proposed construction also identifies the medical care provider as the party entering the information, which is supported by the specification.

"Updated completed claim submission" is construed as *information entered by a medical care provider to edit or update a completed claim submission*.

B. "correcting the completed claim submission based on the updated completed claim submission"

Athena's proposed construction of this claim term is "modifying the completed claim submission based on the updated completed claim submission." AdvancedMD's proposed construction is "editing or updating the existing completed claim submission by adding or substituting the updated completed claim submission."

The parties dispute whether the construction should include the word "existing." Although the claim language already makes clear that "the completed claim submission" refers to the existing completed claim submission, including the word "existing" will be helpful to the jury.

The parties also dispute whether "based on the updated completed claim submission" needs to be construed. Athena contends that the phrase needs no construction, particularly because there is no intrinsic evidence to support AdvancedMD's assertion that this step must be accomplished by "adding or substituting the updated completed claim submission." I agree. The claim step is not so limited.

Finally, the parties propose two different constructions of "correcting" as used in this claim term. Athena proposes "modifying," and AdvancedMD proposes "editing or updating." The proposals do not differ in substance, but in light of the construction of the claim term "correct an error" and for the sake of consistency, I adopt AdvancedMD's proposal.

Therefore, this claim term is construed as *editing or updating the existing completed claim submission based on the updated completed claim submission*.

C.     "transmitting the information to the payor server"

Again, limiting transmissions of information only to "direct" transmissions is inappropriate.

The step "transmitting the information to the payor server" should be read in light of the preceding step, "formatting the completed claim submission into information having a form acceptable to the payor server using claim formatting rules." Col. 22:55-60. "The information" being transmitted is not any information; it is the completed claim submission which has been formatted to have a form acceptable to the payor server. However, this reading is unmistakably clear from the claim language, and no construction is necessary.

/s/ George A. O'Toole, Jr.
United States District Judge